UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MOHAMMAD J.B.,

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-02978-TLN-SCR

(A# 246-800-363)

**RELEASE ORDER**

This matter is before the Court on Petitioner Mohammad J.B.[1]'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an opposition. (ECF No. 7.) Petitioner replied. (ECF No. 10.) At the Court's request, the parties also filed supplemental briefs. (ECF Nos. 12, 16.) For the reasons set forth below, Petitioner's habeas petition is GRANTED.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background[2]

This matter arises from Petitioner's allegedly unlawful detention in immigration custody for eighteen months, three of which have elapsed since his removal order became final. (ECF No. 1.) Petitioner fled his native country[3] due to the political upheaval caused by a change in government and his fear of political persecution the aforementioned circumstances. (ECF No. 16 at 2.) He entered the United States on November 8, 2024, at the Eagle Pass Port of Entry in Texas. (ECF No. 1 at 4; ECF No. 7-1 at 2.) He was immediately detained by immigration authorities and placed in expedited removal proceedings, and has remained in custody since that date. (ECF No. 1 at 1–5; ECF No. 7 at 2.) During Petitioner's detention, Respondents have not provided him with a bond hearing or a custody review.[4] (ECF No. 12 at 2.) He stated that he feared returning to his native country and requested asylum. (*Id.* at 3; ECF No. 1 at 5.) Petitioner has no criminal history and has a nephew in the United States. (ECF No. 7-1 at 3; ECF No. 16 at 2.)

An immigration judge ordered Petitioner removed to his native country on May 21, 2025. (ECF No. 7 at 2.) After several unsuccessful attempts to file an appeal with the Board of Immigration Appeals ("BIA"), his appeal was dismissed on October 30, 2025. (*Id.* at 3.) Petitioner filed a petition for review and motion to stay removal with the Ninth Circuit on November 24, 2025, which granted a temporary stay of removal "until further order of the court." (*Id.*) On January 29, 2026, the petition and motion were transferred to the Fifth Circuit. (*Id.*) That court denied the motion for stay of removal on March 18, 2026, and dismissed the petition on March 18, 2026. (*Id.*)

---

2 These facts are not disputed by Respondents.

3 The Court omits the identity of Petitioner's native country to protect sensitive personal information. *See supra* note 1.

4 In the habeas petition, Petitioner states that he believes that the inability to obtain legal assistance "and prepare for asylum and bond hearing are the main reasons that my asylum [claim was] denied." (ECF No. 1 at 5.) Petitioner appears to be referring to the removal proceedings before immigration court. The "factual background" section of Respondents' opposition to the habeas petition makes no mention of a bond hearing, and the government's records regarding Petitioner similarly do not reflect the existence of one. (ECF Nos. 7–7-7; ECF Nos. 12–12-6.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on April 20, 2026, challenging the lawfulness of his prolonged detention and citing severe impacts to his physical and mental health caused by conditions at the California City Detention Facility. (ECF No. 1 at 5.) Respondents filed a response to the petition on April 27, 2026, identifying 8 U.S.C. § 1231(a)(2) as the statutory authority for Petitioner's detention. (ECF No. 7.) Petitioner filed a reply requesting that the Court hold the matter in abeyance until the expiration of the mandatory detention period under that statute. (ECF No. 10.) On June 24, 2026, the Court ordered Respondents to file a status update identifying their authority for continuing to detain Petitioner past the mandatory detention period. (ECF No. 11.) Respondents filed this update on June 26, 2026. (ECF No. 12.) Petitioner filed a response on July 17, 2026. (ECF No. 16.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner challenges his continued detention as violating the Fifth Amendment's Due Process Clause. (*See* ECF No. 1 at 9; ECF No. 16.) In opposition, Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(2) due to his failure to comply with efforts to remove him. (ECF Nos. 7, 12.) Respondents rely on a declaration from Deportation Officer Saul Garibay, and its accompanying exhibits. (ECF Nos. 12-1–12-6.)

Officer Garibay declares that on May 13, 2026, and June 17, 2026, Petitioner refused to sign a Form I-229(a) warning him of the consequences for failure to comply with removal efforts. (ECF No. 12-1 at 2–3.) Officer Garibay further declares that:

> [U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO")] informed petitioner that if he failed to comply in providing the factual information for the purpose of a travel document request or assisted in removal efforts to another country, he would be failure to comply. [Sic] ERO asked petitioner if he understood and he stated yes. ERO then asked petitioner if he would provide the information ordered for him to provide, and the petitioner said no.

(*Id.* at 2.) However, Respondents note they did not provide Petitioner with a notice of failure to comply. (ECF No. 12 at 3 n.2.)

In response, Petitioner's counsel states that she consulted with Petitioner, and he "indicated that he was willing to sign Form I-299(a)" and asked to be brought that document to sign it. (ECF No. 16 at 2.) Counsel represents that between July 14 and 16, 2026, Petitioner was "presented with numerous documents to sign" but did not understand their contents as he is not literate and does not speak English, and no translation was provided.[5] (*Id.*) He believed that he had signed the Form I-299(a) but could not be sure. (*Id.*)

A. <u>Detention Authority</u>

Respondents argue that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(2) which requires the government to detain a noncitizen during the "removal period." Section 1231 defines the "removal period" within which the "Attorney General shall detain [a noncitizen]" as a 90-day period beginning on the latest of:

> **(i)** The date the order of removal becomes administratively final.
> **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
> **(iii)** If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

---

[5] The Court shares counsel's "immense concern" regarding the lack of translation provided for these documents, as well as Petitioner's apparent inability to understand English. (ECF No. 16 at 3.) If true, this would call into serious doubt Officer Garibay's sworn statement that Petitioner confirmed that he understood the consequences of failing to sign the Form I-299(a). (ECF No. 12-1 at 2.)

8 U.S.C. § 1231(a)(1)(B).

The parties agree that Petitioner was within the removal period until June 18, 2026, which was 90 days after the Fifth Circuit's "final order" denying Petitioner's motion for stay of removal. (ECF No. 7 at 4; ECF No. 10 at 1.) Respondents assert that the removal period has been extended pursuant to 8 U.S.C. § 1231(a)(1)(C), which states that "the removal period shall be extended beyond a period of 90 days . . . if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen]'s departure or conspires or acts to prevent the [noncitizen]'s removal subject to an order of removal." (ECF No. 12.)

The Court finds that Petitioner has not failed to comply with removal efforts. Petitioner confirmed to his counsel that he was willing to sign the Form I-229(a) and attempted to do so. (ECF No. 16 at 2.) Additionally, because Petitioner is not literate, and does not speak English, any alleged previous "failure" to sign a document he did not understand is not a basis to invoke 8 U.S.C. § 1231(a)(1)(C). Respondents have presented no evidence that they provided Petitioner with a translator, or a copy of the form in a language he understood. Indeed, they did not acknowledge the existence of a language barrier at all. (*See generally* ECF Nos. 7, 12.)

Moreover, when the government believes a noncitizen is failing to comply with removal efforts, Respondents' own regulations require them to serve the noncitizen with a notice of failure to comply that advises the noncitizen of the consequences of the alleged non-compliance and explains necessary next steps to ensure compliance. 8 C.F.R. § 241.4(g)(5)(ii). Respondents acknowledge that they did not issue any such notices to Petitioner. (ECF No. 12 at 3, n.2.) Respondents note, under 8 C.F.R. § 241.4(g)(5)(iv), a failure to issue such notice does not excuse Petitioner's conduct, however, the Court weighs Respondents' failure to provide lawful notice in assessing the veracity of Respondents' claims about Petitioner's compliance.

Thus, the Court finds that the § 1231 removal period ended on June 18, 2026. "As soon as [the removal period lapsed], Petitioner entered the post-removal period and was no longer subject to § 1231(a)(2)(A)'s mandatory detention requirement." *Berhe v. Mattos*, 827 F. Supp. 3d 1366, 1373 (D. Nev. 2026).

//

B. <u>Due Process and Petitioner's Continued Detention</u>

In the post-removal period, under 8 U.S.C. § 1231(a)(6), "DHS may continue to detain a non-citizen who is: (i) inadmissible; (ii) removable under certain provisions of § 1227(a); (iii) a risk to the community; or (iv) unlikely to comply with their removal order." *Berhe*, 827 F. Supp. 3d at 1372. But such authority is limited by the demands of due process and "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

To determine whether Petitioner's detention is lawful, the Court must assess whether Petitioner's removal is reasonably foreseeable under *Zadvydas.* In *Zadvydas*, the United States Supreme Court recognized a presumptively reasonable six-month period of detention after a removal order becomes final. *Id.* at 701. Additionally, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. If the presumptive period concludes or the presumption is rebutted, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*

As the removal period began on March 18, 2026, when the Fifth Circuit entered its final order in Petitioner's case, the presumptive period has not concluded. Petitioner argues that, regardless of whether his detention has exceeded the six-month presumptive period, his detention has become unreasonably prolonged. (ECF No. 1 at 9.) The Court agrees.

Respondents have not secured travel documents for Petitioner, confirmation that his native country is willing to accept him, or any indicia of the likelihood of his removal. Indeed, given the hostile relationship between Petitioner's native country and the United States, it is difficult for the Court to see how his removal could be effected in a reasonably expeditious manner. *See, e.g.*, *Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1110 (W.D. Wash. 2025) ("There is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding Petitioner at all."); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)

("Courts in this circuit have regularly refused to find Respondent's burden met where Respondent has offered little more than generalizations regarding the likelihood that removal will occur."). The Court thus concludes that Petitioner has rebutted the *Zadvydas* presumption.

The burden to demonstrate significant likelihood of removal in the reasonably foreseeable future therefore shifts to Respondents. Beyond Respondents' general assertions that Petitioner "is a failure to comply," which the Court rejects for the reasons stated above, they offer no evidence that Petitioner's removal is significantly likely in the reasonably foreseeable future. (ECF No. 12.) Officer Garibay's declaration briefly mentions "removal efforts to another country" but does not identify which third country Respondents may have been considering, or any concrete steps Respondents have taken to effect removal there. (ECF No. 12-1 at 2.) Indeed, due process requires the government to provide Petitioner notice of intent to remove him to any third country and an opportunity to raise a fear-based claim, but there is no reference in the record to such a notice. *See A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025) ("Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator.") The Court therefore finds there is not a significant likelihood of Petitioner's removal in the reasonably foreseeable future and Petitioner's continued detention violates the requirements of due process as promulgated by the Supreme Court in *Zadvydas*.

Finally, Petitioner's claims are not defeated by the timing of his filing. Petitioner filed the petition before the expiration of the removal period, a fact which the Ninth Circuit found to justify dismissal in *Khotesouvan v. Morones*, 386 F.3d 1298 (9th Cir. 2004). Unlike the petitioner in *Khotesouvan*, however, in the case at bar Petitioner has been held in immigration custody for 18 months with no opportunity to be heard as to his custodial status. *See Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("Doe's 17-plus months of detention prior even to the filing of his habeas petition similarly distinguishes the facts here from the Ninth Circuit's determination in *Khotesouvan* that habeas petitions filed during the 90-day period set forth in Section 1231(a)(2) do not contravene due process principles."); *contra Doe v. Becerra*, No. 23-CV-00072-BLF, 2023 WL 218967 at *3 (N.D. Cal. Jan. 17, 2023) (finding no as-applied due process violation because the petitioner challenged only the likelihood of the government identifying a viable country for

third country removal after he had been granted withholding of removal to his native country). In that time, Petitioner has never been afforded an opportunity to be heard as to this detention. Additionally, the government has continued to deprive Petitioner of process in the post-removal period as required by their own regulations, specifically a custody review before the end of the removal period and notices of non-compliance under 8 C.F.R § 241.4.

In *Khotesouvan*, the Ninth Circuit reasoned that "the *Zadvydas* due process analysis does not extend to § 1231(a)(2) [because] the danger to which the *Zadvydas* Court responded—the danger of 'indefinite, perhaps permanent' civil confinement—does not exist when the government is holding [a noncitizen] under § 1231(a)(2), a provision authorizing detention for 90 days only." 386 F.3d at 1301. The risk of indefinite detention in this case, by contrast, is significant where the government has already deprived Petitioner of his liberty without an individualized bond hearing for a year and a half, and where there is no significant likelihood of expeditious removal. *See Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (recognizing as-applied due process challenges to immigration detention despite the applicability of mandatory detention statute). Thus, the Court finds that Petitioner has a viable due process claim for which the Court can grant relief despite the fact that he filed the petition during the removal period.

Given that Petitioner's detention has now lasted eighteen months, he has no criminal record, and has family ties in the United States, the Court concludes that the appropriate remedy for this violation is to order immediate release. (ECF No. 7-1 at 3; ECF No. 16 at 2); *Zadvydas*, 533 U.S. at 690 (noting that because civil immigration detention is "nonpunitive in purpose and effect," it must carry a "special justification," such as "'ensuring the appearance of [noncitizens] at future immigration proceedings' and '[p]reventing danger to the community.'").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus.[6] (ECF No. 1.)

---

[6] Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act. (ECF No. 1 at 17.) The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

1. Respondents must IMMEDIATELY RELEASE Petitioner Mohammad J.B. (A# 246-800-363) from custody on an order of supervision. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with statutory and constitutional protections, including seven-days' pre-deprivation notice and strict compliance with the requirements of 8 C.F.R. §§ 241.4(l) and 241.13(i), and any other applicable statutory and regulatory procedures to revoke an order of supervision.

3. **The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order.**

4. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE